FILED
U.S. Bankruptcy Court
Western District of NC

SEP 25 2026

Christine F. Ramsey, Clerk
Charlotte Division

UNITED STATES BANKRUPTCY COURT
Western District of North Carolina
Charlotte Division

In Re:
GIAVANNA YVETTE COLLINS
Debtor

Case No. 26-30775

SSN: XXX-XX-3814

Chapter 13

**DEBTOR'S OPPOSITION TO TRUSTEE'S OBJECTION TO CONFIRMATION OF PLAN & MOTION TO DISMISS**

GiaVanna Yvette Collins, Debtor, Pro Se, hereby opposes the Trustee's Objection to Confirmation of Chapter 13 Plana and Motion to Dismiss, and states:

**PROCEDURAL AND FACTUAL HISTORY**

1. June 8, 2026, the Debtor filed for Chapter 13 protection.
2. June 25, 2026, Creditor Citadel filed a Proof of Claim.
3. July 15, 2026, the Debtor attended a Meeting of the Creditors.
4. July 16, 2026, Trustee requested revaluation of vehicle, filing of 2025 taxes and amendment of Chapter 13 schedules I and J and the Plan.
5. July 23, 2026, Trustee filed "OBJECTION OF TRUSTEE TO CONFIRMATION OF PLAN; MOTION TO DISMISS" citing

    a. The proposed plan does not comply with the requirements of 11 USC Section 1322 (a) for the reason that it does not provide for the full payment of each priority unsecured claim.

    b. The proposed plan does not comply with the requirements of 11 USC Section 1325 (a)(5) for the reason that it does not provide for the payment of the value of the amount of each allowed secured claim.

c. The debtor(s) have not filed all tax returns for the four (4) year period preceding the case file date, as required by 11 USC Section 1308.

6. September 10, 2026, Debtor filed her 2025 taxes.

7. September 11, 2026, Debtor filed an amended Chapter 13 Plan and with Amended Declaration, 106/206 Summary, Schedule J, Schedule E/F, Schedule D, Schedule A/B, and Cover Sheet.

8. September 14, 2026, IRS Amended their claim.

9. September 14, 2026, Debtor had 15 minute conversation with Trustee's office regarding Trustee's Objections.

10. September 15, 2026, scheduled hearing was continued to September 29, 2026.

11. September 16, 2026, Debtor had 3 minute conversation with Trustee's office regarding Trustee's Objections.

12. September 23, 2026, Debtor had 7 minute conversation with Trustee's office regarding Trustee's Objections, where it was learned that Trustee was proceeding with her objection and motion to dismiss with respect to the value of the vehicle. There was also discussion regarding an improper classification of the IRS debt and the appropriate interest rate listed in the amended Chapter 13 Plan.

13. The Debtor has made all schedule Plan payments and is current.

14. This opposition to the Trustee's objection and motion to dismiss follows.

**ARGUMENTS**

**THE PROPOSED PLAN DOES NOT COMPLY WITH THE REQUIREMENTS OF 11 USC SECTION 1322 (A) FOR THE REASON THAT IT DOES NOT PROVIDE FOR THE FULL PAYMENT OF EACH PRIORITY UNSECURED CLAIM.**

This objection has been resolved by the filing of the 2025 taxes, the amended claim filed by the IRS, and the amended Chapter 13 Plan filed by the debtor.

**THE DEBTOR(S) HAVE NOT FILED ALL TAX RETURNS FOR THE FOUR (4) YEAR PERIOD PRECEDING THE CASE FILE DATE, AS REQUIRED BY 11 USC SECTION 1308.**

This objection has been resolved by the filing of the 2025 taxes.

**THE TILL INTEREST RATE SHOULD USED FOR THE VEHICLE**

This informal objection has been resolved by the Debtor increasing the vehicle interest rate in the amended Plan to 8.75%, which is the rate given by the Trustee's office.

**THE PROPOSED PLAN DOES NOT COMPLY WITH THE REQUIREMENTS OF 11 USC SECTION 1325 (A)(5) FOR THE REASON THAT IT DOES NOT PROVIDE FOR THE PAYMENT OF THE VALUE OF THE AMOUNT OF EACH ALLOWED SECURED CLAIM.**

<u>Introduction</u>

The Chapter 13 Trustee (the "Trustee") has filed an objection to the Debtor's valuation of a 2023 Kia Telluride motor vehicle (the "Vehicle") with significant body damage, as proposed in the Debtor's Chapter 13 plan.

On June 25, 2026, the creditor for the Vehicle, Citadel Credit Union, filed a Proof of Claim for $41,194.19.

In the Debtor's initial Plan, the Vehicle was valued at $20,000.00. However, the Trustee advised the Debtor that NADA has to be used and a report would have to be obtained from a professional to alter the NADA value.

The Debtor then filed an amended Plan and valued the Vehicle starting with the NADA Official Used Car Guide retail value of $34,573, and subtracting the documented cost of repairs

necessary to restore the Vehicle to standard retail condition, as established by Caliber Collision (an independent, third-party body-shop estimate) of $14,187.96 for a total actual value of $20,385.00. **See Exhibits A and B, respectively.**

The resulting figure represents the Vehicle's replacement value in its current, damaged condition—precisely the measure that 11 U.S.C. § 506(a)(2) and the Supreme Court's decision in Assocs. Commer. Corp. v. Rash, 520 U.S. 953, 965, 117 S. Ct. 1879, 1886, 138 L.Ed.2d 148, 160 (1997).

Critically, the secured creditor holding a lien on the Vehicle filed a proof of claim but did not object to the Debtor's proposed valuation, did not object to confirmation of the plan, and did not enter an appearance in this case. The party with the greatest financial stake in the valuation outcome has affirmatively chosen not to contest the Debtor's methodology or proposed value.

For the reasons set forth below, the Debtor respectfully requests that this Court accept the Debtor's valuation of the Vehicle and overrule the Trustee's objection.

**A. The Replacement-Value Standard Under § 506(a) and *Rash***

Section 506(a)(1) of the Bankruptcy Code provides that an allowed claim secured by a lien on property in which the estate has an interest "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."

According to section 506(a)(1) of the Bankruptcy Code, a claim secured by a Debtor's collateral is an allowed secured claim "to the extent of the value of such creditor's interest in the estate's interest in such property . . . .".

For individual debtors under chapter 7 or 13, section 506(a)(2) defines the value of personal property collateral as "replacement value of such property as of the date of the filing of

the petition without deduction for costs of sale or marketing." Further, "[w]ith respect to property acquired for personal, family, or household purposes, replacement value . . . mean[s] the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." Moreover, the lien securing a creditor's allowed secured claim is generally limited to the value of the property securing the claim. See Assocs. Commer. Corp. v. Rash, 520 U.S. 953, 965, 117 S. Ct. 1879, 1886, 138 L.Ed.2d 148, 160 (1997); Hurlburt v. Black, 925 F.3d 154, 163-64 (4th Cir. 2019); In re Solis, 576 B.R. 828, 831 (Bankr. W.D. Tex. 2016); In re Douay, No. 17-bk-750, 2018 Bankr. LEXIS 131, at *4 (Bankr. N.D.W. Va. Jan. 19, 2018); 11 U.S.C. § 506(a)(2) and 11 U.S.C. § 506(d).

## B. Burden of Proof

The debtor bears the ultimate burden of proving collateral value by a preponderance of the evidence. In re Lamb, 665 B.R. 603 (Bankr. E.D.N.C.) (surveying Fourth Circuit authority and adopting the preponderance standard for § 506(a) valuations in Chapter 13); In re Brown, 244 B.R. 603, 607–10 (Bankr. W.D. Va. 2000) (same).

## C. NADA Retail Is the Recognized Starting Point in North Carolina Bankruptcy Courts

In In re Hardy, the court confirmed that NADA "does not give an end number, but instead provides a presumptive baseline or 'starting point' for use in determining the correct retail value of personal property for plan cram down purposes under 11 U.S.C. § 1325(a)(5)," and that "general average value is subject to further adjustment based upon evidence concerning the actual condition and need for repairs of the item." In re Hardy, 2016 Bankr. LEXIS 2341 (Bankr. E.D.N.C. 2016).

**D. The Statutory Standard Requires Consideration of Condition, and the Repair Estimate Satisfies That Requirement**

The replacement-value standard under § 506(a)(2) expressly requires that value be determined "considering the age and condition of the property." In re Solis, 576 B.R. 828, 831 (Bankr. W.D. Tex. 2016)

Body damage directly and materially affects what a willing buyer in the debtor's situation would pay for the Vehicle. A vehicle with significant unrepaired damage is not the equivalent of a vehicle in standard retail condition, and a valuation that fails to account for that damage would overstate replacement value, contrary to the statutory command.

The Debtor's body-shop repair estimate is objective, third-party documentation of the cost that would be incurred to bring the Vehicle from its current damaged condition to the standard retail condition assumed by the NADA baseline value.

This is precisely the type of condition-specific evidence that North Carolina courts contemplate. Hardy expressly recognized that the NADA baseline is "subject to further adjustment based upon evidence concerning the actual condition and need for repairs of the item." In re Hardy, No. 15-05431-5-JNC, 2016 Bankr. LEXIS 2341, at *6 (Bankr. E.D.N.C. June 21, 2016).

The Debtor's approach is not novel.

**E. The Methodology Is Conservative and Verifiable**

The Debtor did not use wholesale value, an arbitrary discount, or self-serving testimony. The Debtor used NADA retail—the very benchmark North Carolina courts treat as presumptive—and adjusted it using a specific, documentable estimate from an independent body shop.

This approach is both conservative and transparent: it relies on objective market data and verifiable third-party documentation, and it arrives at a figure that represents the actual replacement value of this specific Vehicle in its current condition. It is exactly what § 506(a)(2), Rash, and North Carolina precedent require.

**F. The secured creditor's failure to object or appear constitutes waiver or acceptance**

Section 1325(a)(5) of the Bankruptcy Code provides three alternative conditions for confirmation of a plan's treatment of a secured claim. The first—and most relevant here—is that "the holder of such claim has accepted the plan." 11 U.S.C. § 1325(a)(5)(A). See In re Powell, 640 B.R. 882, 883 (Bankr. D.S.C. 2022)([A] secured creditor's failure to object to its treatment in a Chapter 13 plan constitutes acceptance of the plan under § 1325(a)(5)(A)); In re Daniels, 657 B.R. 819, 824 (Bankr. D.S.C. 2024) (Same).

**G. The Secured Creditor Here Has Accepted the Debtor's Proposed Treatment**

Here, the secured creditor filed a proof of claim but took no further action whatsoever. It did not object to the Debtor's proposed valuation. It did not object to confirmation of the plan. It did not enter an appearance. After receiving proper notice of the plan's treatment of its claim—including the Debtor's proposed valuation of the Vehicle—the secured creditor remained entirely silent.

Under the authorities cited above, this silence constitutes acceptance of the plan's treatment of the secured claim under § 1325(a)(5)(A), including the Debtor's proposed valuation.

**H. The Debtor Has Exceeded the Evidentiary Threshold for an Unopposed Valuation**

Even apart from the implied-acceptance doctrine, the Debtor's evidence more than satisfies the threshold for an unopposed valuation. In re Brown established that absent a creditor objection, the debtor "has the equivalent of a default judgment" and the case may proceed on the debtor's sworn representations alone. In re Brown, 244 B.R. 603, 609 (Bankr. W.D. Va. 2000)

The Debtor has provided substantially more than mere sworn representations: objective NADA market data and an independent, third-party body-shop repair estimate. The evidentiary record supporting the Debtor's valuation is robust even under a contested standard, and it is more than sufficient under the default-judgment framework that governs when no creditor objects.

**H. The trustee should not be permitted to advocate for a silent secured creditor**

With all due respect to the Trustee, the Debtor acknowledges that the Chapter 13 Trustee has standing to object to confirmation of a Chapter 13 plan generally. However, the specific objection the Trustee raises here concerns the treatment of the secured creditor's allowed secured claim under § 1325(a)(5). The adequacy of that treatment is a matter that directly and primarily affects the secured creditor's economic interest.

The secured creditor is the party with the greatest financial stake in the Vehicle's valuation outcome. It is the party best positioned to evaluate whether the Debtor's methodology and proposed value are adequate. And it is the party that, after receiving proper notice, affirmatively chose not to object to the Debtor's proposed valuation, not to challenge the plan, and not to appear.

Permitting the Trustee to independently relitigate a valuation dispute that the secured creditor itself declined to raise would effectively nullify the secured creditor's implied acceptance

under § 1325(a)(5)(A). The doctrine of implied acceptance depends on the principle that objection deadlines carry consequences and that a creditor's silence after proper notice has binding legal significance .

The Trustee's principal role in Chapter 13 is to administer the plan and protect the interests of unsecured creditors and the integrity of the bankruptcy process. The Trustee does not serve as a surrogate advocate for a secured creditor that has elected not to contest the Debtor's proposed treatment. The valuation of collateral for purposes of § 506(a) and § 1325(a)(5) is fundamentally a dispute between the debtor and the secured creditor. When the secured creditor has determined that the Debtor's valuation does not warrant a challenge, the Trustee's insertion into that dispute on the creditor's behalf is neither required by statute nor supported by the policies underlying Chapter 13.

If the Trustee may freely override that silence by raising valuation challenges on the creditor's behalf, the acceptance doctrine is rendered meaningless and the policy of finality that underlies § 1325(a)(5)(A) and § 1327(a) is defeated.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that this Court overrule the Trustee's objections and accept the Debtor's valuation of the Vehicle. The Debtor's methodology—beginning with NADA retail and subtracting documented repair costs for body damage—is legally sound, consistent with the replacement-value standard of 11 U.S.C. § 506(a)(2) and Associates Commercial Corp. v. Rash, 520 U.S. 953 (1997), and squarely in line with the established practice of the North Carolina bankruptcy courts.

The secured creditor's silence after proper notice constitutes acceptance of the plan and the Debtor's proposed valuation under § 1325(a)(5)(A).

The Trustee should not be permitted to relitigate a valuation that the secured creditor, the party with the direct financial interest, chose not to contest.

The Debtor has met and exceeded any applicable evidentiary burden. The Court should confirm the Debtor's proposed valuation of the Vehicle and overrule the Trustee's objection.

Respectfully Submitted,

Date: September 25, 2026

GiaVanna Y. Collins, Debtor, Pro Se

# **Exhibit A**

# NADA Vehicle Value

JDPOWER

# 2023 KIA TELLURIDE

Utility 4D SX-P AWD Values

## PRICING & VALUES

Prices shown for the used **2023 Kia Telluride Utility 4D SX-P AWD** with 74500 miles are what people paid to buy this vehicle or what people received when trading in this vehicle at a dealer. **Edit options.**

## BUY FROM DEALER

Prices shown are what people paid including dealer discounts. Taxes and fees (title, registration, license, document, and transportation fees) are not included.

Buy from Dealer   Buy Certified from Dealer

Average Price Paid

**$34,573**



80% of People Paid

**$31,587 - $37,642**

## ESTIMATED TRADE-IN VALUE

Prices shown are what people received from a dealer for their trade-in vehicle by condition. **See definitions.**

| | |
|---|---|
| Base Price | $28,250 |
| Mileage and Options | -$1,450 |
| **Low** | **$26,800** |
| Base Price | $30,000 |
| Mileage and Options | -$1,450 |
| **Average** | **$28,550** |
| Base Price | $31,000 |
| Mileage and Options | -$1,450 |
| **High** | **$29,550** |

The values are not for commercial use.
Looking for values for your business? **JD Power Valuation Services** can help.

## 2023 KIA TELLURIDE PHOTOS AND VIDEOS

# **Exhibit B**

# Repair Estimates

CALIBER COLLISION

**CALIBER - CONCORD NC - RAIFORD DR**

RESTORING THE RHYTHM OF YOUR LIFE
65 Raiford Dr NW, Concord, NC 28027
Phone: (704) 935-5587

| | |
|---|---|
| Workfile ID: | aa6f682f |
| Federal ID: | 33-0730794 |
| State ID: | 33-0730794 |
| Federal EPA: | N/A |
| State EPA: | N/A |

## Preliminary Estimate

**Customer: Collins, Gia Vanna**

Written By: Allison Teeter, -

| | | | | | |
|---|---|---|---|---|---|
| Insured: | Collins, Gia Vanna | Policy #: | | Claim #: | |
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 |
| Point of Impact: | | | | | |

**Owner:**
Collins, Gia Vanna
drgdfbhfh
rhf

**Inspection Location:**
CALIBER - CONCORD NC - RAIFORD DR
65 Raiford Dr NW
Concord, NC 28027
Repair Facility
(704) 935-5587 Business

**Insurance Company:**
CUSTOMER PAY

## VEHICLE

2023 KIA Telluride SX Prestige AWD 4D UTV 6-3.8L Gasoline Direct Injection Ebony Black

| | | | | | | |
|---|---|---|---|---|---|---|
| VIN: | 5XYP5DGC1PG330063 | Interior Color: | Black | Mileage In: | | Vehicle Out: |
| License: | | Exterior Color: | Ebony Black | Mileage Out: | | |
| State: | | Production Date: | 9/2022 | Condition: | | Job #: |

**TRANSMISSION**
Automatic Transmission
4 Wheel Drive

**POWER**
Power Steering
Power Brakes
Power Windows
Power Locks
Power Mirrors
Heated Mirrors
Power Driver Seat
Power Passenger Seat
Memory Package

**DECOR**
Dual Mirrors
Privacy Glass
Console/Storage
Overhead Console
Wood Interior Trim
Intermittent Wipers
Tilt Wheel
Cruise Control
Rear Defogger
Keyless Entry
Alarm
Message Center
Steering Wheel Touch Controls
Rear Window Wiper
Telescopic Wheel
Heated Steering Wheel
Climate Control
Navigation System
Backup Camera
Parking Sensors
Surround View Camera
Remote Starter
Intelligent Cruise
Home Link
FM Radio
Stereo
Search/Seek
Auxiliary Audio Connection
Premium Radio
Satellite Radio

**SAFETY**
Drivers Side Air Bag
Passenger Air Bag
Anti-Lock Brakes (4)
4 Wheel Disc Brakes
Traction Control
Stability Control
Front Side Impact Air Bags
Head/Curtain Air Bags
Rear Side Impact Air Bags
Communications System
Hands Free Device
Xenon or L.E.D. Headlamps
Lane Departure Warning

**ROOF**
Electric Glass Sunroof
Skyview Roof

**SEATS**
Bucket Seats
Leather Seats
Heated Seats
Rear Heated Seats
Ventilated Seats
3rd Row Seat

**WHEELS**
20" Or Larger Wheels

**PAINT**
Clear Coat Paint

**OTHER**
Fog Lamps
Rear Spoiler
Signal Integrated Mirrors

**Preliminary Estimate**

**Customer: Collins, Gia Vanna**

2023 KIA Telluride SX Prestige AWD 4D UTV 6-3.8L Gasoline Direct Injection Ebony Black

| **CONVENIENCE** | **RADIO** | Blind Spot Detection | **TRUCK** |
|---|---|---|---|
| Air Conditioning | AM Radio | Heads Up Display | Power Trunk/Liftgate |

**Preliminary Estimate**

**Customer: Collins, Gia Vanna**

2023 KIA Telluride SX Prestige AWD 4D UTV 6-3.8L Gasoline Direct Injection Ebony Black

| Line | | Oper | Description | Part Number | Qty | Extended Price $ | | Labor | Paint |
|---|---|---|---|---|---|---|---|---|---|
| 1 | **FRONT BUMPER & GRILLE** | | | | | | | | |
| 2 | | | O/H front bumper | | | | | 3.2 | |
| 3 | <> | Repl | Bumper cover w/front park aid | 86510S9510 | 1 | 645.43 | | Incl. | 3.3 |
| 4 | | | Add for Clear Coat | | | | | | 1.3 |
| 5 | | | Add for park sensor | | | | m | 0.4 | |
| 6 | | | Add for front camera | | | | m | 0.3 | |
| 7 | | Repl | Lower cover natural black | 86512S9500 | 1 | 709.20 | | Incl. | |
| 8 | | Repl | RT Side bracket | 86552S9000 | 1 | 41.58 | | 0.1 | |
| 9 | | Repl | LT Side bracket | 86551S9000 | 1 | 40.50 | | 0.1 | |
| 10 | **FRONT LAMPS** | | | | | | | | |
| 11 | | R&I | RT R&I headlamp assy | | | | | 0.5 | |
| 12 | | R&I | LT R&I headlamp assy | | | | | 0.5 | |
| 13 | **FENDER** | | | | | | | | |
| 14 | * | Rpr | LT Fender | | | | | 2.0 | 2.2 |
| 15 | | | Overlap Major Non-Adj. Panel | | | | | | -0.2 |
| 16 | | | Add for Clear Coat | | | | | | 0.4 |
| 17 | | R&I | LT Fender liner | | | | | 0.3 | |
| 18 | | Repl | LT Wheel opng mldg | 87711S9000 | 1 | 405.00 | | 0.3 | |
| 19 | * | Rpr | RT Fender | | | | | 2.0 | 2.2 |
| 20 | | | Overlap Major Non-Adj. Panel | | | | | | -0.2 |
| 21 | | | Add for Clear Coat | | | | | | 0.4 |
| 22 | | R&I | RT Fender liner | | | | | 0.3 | |
| 23 | | Repl | RT Wheel opng mldg | 87712S9000 | 1 | 378.00 | | 0.3 | |
| 24 | **PILLARS, ROCKER & FLOOR** | | | | | | | | |
| 25 | | Repl | RT Rocker molding | 87752S9000 | 1 | 708.32 | | 0.6 | |
| 26 | **FRONT DOOR** | | | | | | | | |
| 27 | | Repl | RT Door shell | 76004S9001 | 1 | 1,618.88 | | 5.5 | 3.1 |
| 28 | | | Overlap Major Adj. Panel | | | | | | -0.4 |
| 29 | * | | Add for Clear Coat | | | | | | 0.5 |
| 30 | | Repl | RT Body side mldg silver painted | 87722S9300 | 1 | 450.00 | | 0.3 | |
| 31 | **REAR DOOR** | | | | | | | | |
| 32 | | Repl | RT Door shell w/sunshade | 77004S9011 | 1 | 1,618.85 | | 5.3 | 3.1 |
| 33 | | | Overlap Major Adj. Panel | | | | | | -0.4 |
| 34 | * | | Add for Clear Coat | | | | | | 0.5 |
| 35 | | Repl | RT Body side mldg silver painted | 87732S9300 | 1 | 564.50 | | 0.3 | |
| 36 | **QUARTER PANEL** | | | | | | | | |
| 37 | * | Rpr | RT Quarter panel | | | | | 4.0 | 2.7 |
| 38 | | | Overlap Major Adj. Panel | | | | | | -0.4 |
| 39 | * | | Add for Clear Coat | | | | | | 0.5 |
| 40 | | Repl | RT Wheel opng mldg | 87742S9000 | 1 | 178.10 | | 0.3 | |
| 41 | **REAR BUMPER** | | | | | | | | |
| 42 | | | O/H rear bumper | | | | | 3.6 | |
| 43 | <> | Repl | Bumper cover | 86611S9500 | 1 | 709.20 | | Incl. | 3.2 |

**Preliminary Estimate**

**Customer: Collins, Gia Vanna**

2023 KIA Telluride SX Prestige AWD 4D UTV 6-3.8L Gasoline Direct Injection Ebony Black

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 44 | | | Overlap Major Non-Adj. Panel | | | | | -0.2 |
| 45 | * | | Add for Clear Coat | | | | | 0.6 |
| 46 | | Repl | Lower cover w/twin tip | 86612S9510 | 1 | 504.82 | Incl. | |
| | | | | **SUBTOTALS** | | **8,572.38** | **30.2** | **22.2** |

**ESTIMATE TOTALS**

| Category | Basis | | Rate | Cost $ |
|---|---|---|---|---|
| Parts | | | | 8,572.38 |
| Body Labor | 30.2 hrs | @ | $ 67.00 /hr | 2,023.40 |
| Paint Labor | 22.2 hrs | @ | $ 67.00 /hr | 1,487.40 |
| Paint Supplies | 22.2 hrs | @ | $ 53.00 /hr | 1,176.60 |
| Subtotal | | | | 13,259.78 |
| Sales Tax | $ 13,259.78 | @ | 7.0000 % | 928.18 |
| **Grand Total** | | | | **14,187.96** |

=================================================================

Caliber Collision is the industry leader in quality collision repair. Since day one, our highest purpose has been to get people just like you back on the road as quickly as possible and fully restored to the rhythm of your life. You can be sure we do everything possible to ensure your complete satisfaction including:

Personalized, high quality service from the largest collision repair company in the U.S.
Consistently ranked among the highest customer satisfaction scores in the industry.
Approved by every major insurance company in the U.S.
Expedited car rental and towing services to get you back on the road again in no time.
Repair work backed by a written, lifetime warranty honored at every location.
24/7/365 customer service to answer questions and put your mind at ease.

This is a preliminary estimate based on visible damage. There may be additional repairs needed once the vehicle is taken apart by our I-CAR Gold Class technicians to identify any additional damage.

If an insurance company has written an estimate for you, please provide us with a copy. Properly endorsed insurance company checks are welcome as payment for the repair of your vehicle. Caliber Collision gladly accepts all major credit cards, debit cards, cashier's and traveler's checks. See your Caliber Collision center for details on acceptance of personal checks.

Before leaving your vehicle with us, please remove all important personal and valuable items from your vehicle. Caliber Collision is not responsible for belongings left in your vehicle.

Please let us know how we can be of further assistance, and when we can schedule an appointment for your vehicle to be repaired.

Caliber Collision - Restoring The Rhythm Of Your Life

=================================================================

**Preliminary Estimate**

**Customer: Collins, Gia Vanna**

2023 KIA Telluride SX Prestige AWD 4D UTV 6-3.8L Gasoline Direct Injection Ebony Black

Estimate based on MOTOR CRASH ESTIMATING GUIDE and potentially other third party sources of data. Unless otherwise noted, (a) all items are derived from the Guide ARY2315, CCC Data Date 08/17/2026, and potentially other third party sources of data; and (b) the parts presented are OEM-parts. OEM parts are manufactured by or for the vehicle's Original Equipment Manufacturer (OEM) according to OEM's specifications for U.S. distribution. OEM parts are available at OE/Vehicle dealerships or the specified supplier. OPT OEM (Optional OEM) or ALT OEM (Alternative OEM) parts are OEM parts that may be provided by or through alternate sources other than the OEM vehicle dealerships with discounted pricing. Asterisk (*) or Double Asterisk (**) indicates that the parts and/or labor data provided by third party sources of data may have been modified or may have come from an alternate data source. Tilde sign (~) items indicate MOTOR Not-Included Labor operations. The symbol (<>) indicates the refinish operation WILL NOT be performed as a separate procedure from the other panels in the estimate. Non-Original Equipment Manufacturer aftermarket parts are described as Non OEM, A/M or NAGS. Used parts are described as LKQ, RCY, or USED. Reconditioned parts are described as Recond. Recored parts are described as Recore. NAGS Part Numbers and Benchmark Prices are provided by National Auto Glass Specifications. Labor operation times listed on the line with the NAGS information are MOTOR suggested labor operation times. NAGS labor operation times are not included. Pound sign (#) items indicate manual entries.

Some 2024 vehicles contain minor changes from the previous year. For those vehicles, prior to receiving updated data from the vehicle manufacturer, labor and parts data from the previous year may be used. The CCC ONE estimator has a list of applicable vehicles. Parts numbers and prices should be confirmed with the local dealership.

The following is a list of additional abbreviations or symbols that may be used to describe work to be done or parts to be repaired or replaced:

SYMBOLS FOLLOWING PART PRICE:
m=MOTOR Mechanical component. s=MOTOR Structural component. T=Miscellaneous Taxed charge category. X=Miscellaneous Non-Taxed charge category.

SYMBOLS FOLLOWING LABOR:
D=Diagnostic labor category. E=Electrical labor category. F=Frame labor category. G=Glass labor category. M=Mechanical labor category. S=Structural labor category. (numbers) 1 through 4=User Defined Labor Categories.

OTHER SYMBOLS AND ABBREVIATIONS:
Adj.=Adjacent. Algn.=Align. ALU=Aluminum. A/M=Aftermarket part. Blnd=Blend. BOR=Boron steel. CAPA=Certified Automotive Parts Association. CFC=Carbon Fiber. D&R=Disconnect and Reconnect. HSS=High Strength Steel. HYD=Hydroformed Steel. Incl.=Included. LKQ=Like Kind and Quality. LT=Left. MAG=Magnesium. Non-Adj.=Non Adjacent. NSF=NSF International Certified Part. O/H=Overhaul. Qty=Quantity. Refn=Refinish. Repl=Replace. R&I=Remove and Install. R&R=Remove and Replace. Rpr=Repair. RT=Right. SAS=Sandwiched Steel. Sect=Section. STS=Stainless Steel. Subl=Sublet. UHS=Ultra High Strength Steel. N=Note(s) associated with the estimate line.

CCC ONE Estimating - A product of CCC Intelligent Solutions Inc.

The following is a list of abbreviations that may be used in CCC ONE Estimating that are not part of the MOTOR CRASH ESTIMATING GUIDE:
BAR=Bureau of Automotive Repair. EPA=Environmental Protection Agency. NHTSA= National Highway Transportation and Safety Administration. PDR=Paintless Dent Repair. VIN=Vehicle Identification Number.

UNITED STATES BANKRUPTCY COURT
Western District of North Carolina
Charlotte Division

In Re:

GIAVANNA YVETTE COLLINS
Debtor

Case No. 26-30775

SSN: XXX-XX-3814

Chapter 13

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served each party or counsel of record indicated on the list below with a copy of the attached document that was filed with the Clerk of Court on September 25, 2026 via the CM/ECF filing system. Non-ECF users were served by depositing in the United States mail a copy of the same in a properly addressed envelope with first class postage thereon. ECF users were served electronically.

Service Date: September 25, 2026

GiaVanna Y. Collins, Debtor, Pro Se

JENNY P. HOLMAN. STANDING CHAPTER 13 TRUSTEE, 3800 ARCO CORPORATE DR, SUITE 510, CHARLOTTE, NC 28273
BANK OF AMERICA, PO BOX 15019, WILMINGTON, DE 19886
BANK OF AMERICA, PO BOX 982238, EL PASO, TX 79998-2238
CABARRUS COUNTY TAX COLLECTOR, PO BOX 707, CONCORD, NC 28026-0707
CAPITAL ONE, PO BOX 30285, SALT LAKE CITY, UT 84130
CITADEL FEDERAL CREDIT UNION, 520 EAGLEVIEW BLVD, EXTON, PA 19341
CITIBANK N.A., 350 CAMINO DE LA REINA, SAN DIEGO, CA 92108-3007
GIAVANNA YVETTE COLLINS, 1220 EL PASO STREET, KANNAPOLIS, NC 28083
INTERNAL REVENUE SERVICE, PO BOX 7317, INSOLVENCY REMITTANCE, PHILADELPHIA, PA 19101-7317
INTERNAL REVENUE SERVICE, PO BOX 7346, PHILADELPHIA, PA 19101-7346
KIA MOTOR FINANCE, 10550 TALBERT AVENUE, FOUNTAIN VALLEY, CA 92708
KIA MOTORS FINANCE COMPANY, PO BOX 20825, FOUNTAIN VALLEY, CA 92728
LVNV FUNDING LLC, PO BOX 1269, GREENVILLE, SC 29602
LVNV FUNDING LLC, RESURGENT CAPITAL SERVICES, PO BOX 10587, GREENVILLE, SC 29603-0587
MIDLAND CREDIT MANAGEMENT, 350 CAMINO DE LA REINA, SAN DIEGO, CA 92108
MIDLAND CREDIT MANAGEMENT, PO BOX 939069, SAN DIEGO, CA 92123
NC DEPARTMENT OF REVENUE, BANKRUPTCY UNIT, PO BOX 1168, RALEIGH, NC 27602-1168
PA DEPARTMENT OF REVENUE, PO BOX 280504, HARRISBURG, PA 17128-0504
WELLS FARGO BANK NA, WELLS FARGO AUTO, PO BOX 169005, IRVING, TX 75016
WELLS FARGO BANK NA, WELLS FARGO AUTO, PO BOX 51963, LOS ANGELES, CA 90051-6263
WELLS FARGO DEALER SERVICES, PO BOX 71092, CHARLOTTE, NC 28272

Total Served: 21